# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| In re: )<br>    Charlene I. Stovall, )<br>                    Debtor. ) | Case No. 05-73902-TOM |
| Daniels Capital Corporation, )<br>           Plaintiff, )<br>v. )<br>  )<br>Charlene I. Stovall, )<br>           Defendant. ) | Adv. Proc. No. 06-70009 |

## MEMORANDUM OPINION

This matter came before the Court on November 17, 2008 on a status conference on the Complaint filed by Daniels Capital Corporation ("Daniels") against Charlene I. Stovall (the "Debtor"). Appearing at the hearing were Cindee Holmes, counsel for the Plaintiff, and the Debtor. Based on the pleadings, arguments of the parties, and the law, the Court makes the following findings of fact and conclusions of law[1].

### Findings of Fact[2]

The Debtor, an attorney licensed to practice law in the state of Alabama, filed for chapter 7 protection on October 16, 2005 (the "Petition Date")[3]. In her schedules (doc. no. 1[4]), as originally filed on the Petition Date, the Debtor lists no real property, no personal property, no secured debts, no unsecured priority debts and no unsecured debts. On October 25, 2005, the Debtor amended her schedules (doc. no. 6) and listed real property, certain personal property, a mortgage and numerous unsecured debts. Among

---

[1] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052, applicable in adversary proceedings.

[2] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. See ITT Rayonier, Inc. v. U.S., 651 F.2d 343 (5th Cir. 1981); Florida v. Charley Toppino & Sons, Inc., 514 F.2d 700, 704 (5th Cir. 1975).

[3] This case was originally filed in the Western Division and subsequently transferred here, as discussed below.

[4] Documents filed in the main bankruptcy case are referred to as "doc. no." while documents filed in the adversary proceeding are referred to as "adv. proc. doc. no."

1

the unsecured debts, the Debtor listed a debt of $115,986.04 owed to Daniels, disputed. The column asking for the date the claim was incurred and the nature of the claim was left blank. On the Debtor's Statement of Financial Affairs, the Debtor lists a judgment against her obtained in Shelby County in the amount of $115,986.04. The case number of the state court action is provided but the caption of the lawsuit, as required, is not. Presumably, given the matching dollar amounts, the judgment is the same unsecured debt the Debtor listed as owing, though disputed, to Daniels. On October 30, 2006, the Debtor filed a Motion to Convert Case to Chapter 13 (doc. no. 39) and, on November 1, 2006, the Court entered an order converting the case to a chapter 13 case (doc. no. 40).

On January 21, 2006, the Plaintiff instituted this adversary proceeding seeking an exception to discharge. In the Complaint, Daniels asserts that it provides certain fee advancement services to court appointed attorneys in advance of the funds being paid by the State of Alabama once the court appointed attorney complies with certain procedures and submits a fee declaration to Daniels. On January 25, 2000, Daniels and the Debtor entered into an agreement whereby Daniels would provide this service to the Debtor, who served as a court appointed attorney in certain civil matters. In the Complaint, Daniels asserts that the Debtor received funds from Daniels on three separate occasions based on fee declarations that Daniels ultimately determined were worthless because they were not filed, had their value inflated or were later vacated because the Debtor did not use proper care in handling the civil matters. Daniels filed suit against the Debtor on January 26, 2005 in the Circuit Court of Shelby County, Case No. CV-05-95 (which corresponds to the case number listed in the Debtor's Schedules of Financial Affairs). In the Adversary Complaint, Daniels alleges that, in an order dated June 21, 2005, a copy which is attached to the Complaint, the Debtor was found guilty of "conversion, misrepresentation, breach of fiduciary duty, breach of contract, unjust enrichment, and intentional, premeditated,

2

and malicious fraud in regards to her behavior toward the plaintiff, Daniels Capital Corporation" and Daniels was awarded a judgment of $115,986.04[5]. Based on this fraudulent conduct, Daniels filed the Complaint, sought an order of this Court finding the debt to be non-dischargeable pursuant to section 523(a)(2), (4) and (6) and sought fees and costs.

On February 3, 2006, Daniel's counsel filed a certificate of service which reflects that the Debtor was served with a copy of the Complaint and summons (adv. proc. doc. no. 7). No answer was timely filed and, on April 5, 2006, the Plaintiff filed a Motion for Default Judgment (adv. proc. doc. no. 10). On April 18, 2006, before any action was taken on the Motion for Default Judgment, the Debtor filed her Answer (adv. proc. doc. no. 12). The Motion for Default Judgment was ultimately denied (adv. proc. doc. no. 17) and the Court set a pre-trial hearing for October 31, 2006 which was continued to December 12, 2006. Following the pre-trial, a hearing was set and continued numerous times with a final hearing scheduled for May 14, 2007.

On May 22, 2007, Judge Stilson, who was initially assigned to the case, recused himself (adv. proc. doc. no. 27, doc. no. 103) from both the adversary proceeding and main bankruptcy case and the case was reassigned here. This Court set the adversary proceeding for a status conference only on June 18, 2007. At the status conference, the matter was continued so it could be heard with confirmation on July 12, 2007. The matter was continued numerous times while the parties attempted to reach a settlement. On September 13, 2007, the Court granted the Bankruptcy Administrator's Motion to Convert (doc. no. 69) and the case was converted from a chapter 13 case back to a chapter 7 case (doc. no. 130). Also on September 13, 2007, the parties agreed to go to mediation regarding the Daniels' adversary proceeding. Following mediation, on

---

[5] This figure represents $28,996.51 in compensatory damages and $86,989.53 in punitive damages.

3

November 19, 2007, the Chief Deputy Bankruptcy Administrator, who served as the mediator, filed his Report to the Court (adv. proc. doc. no. 40). In it, he states that mediation was held on November 19, 2007 and resulted in a settlement that the parties were drafting settlement documents which would be submitted to the Court for approval.

No motion to approve compromise was filed and on February 15, 2008 the Clerk of the Court issued a notice (adv. proc. doc. no. 42) stating that if no action was taken within 10 days the adversary proceeding would be dismissed and closed. On February 25, 2008, Daniels filed a motion to extend the deadline to file a motion to approve compromise (adv. proc. doc. no. 44). The Court granted the motion by Order (adv. proc. doc. no. 45) dated February 28, 2008 and extended the deadline for an additional ten days.

On March 8, 2008, Daniels filed a Motion to Approve Compromise (adv. proc. doc. no. 47) and the Clerk's office set the matter for hearing on April 7, 2008. In the Motion to Approve Compromise, signed only by Daniels, Daniels asserts that at the mediation, the parties agreed that the Debtor would allow a non-dischargeable judgment in the amount of $52,000.00 to be entered and recorded against her. The Debtor could thereafter satisfy the judgment by paying $28,000.00 payable at $300.00 per month at 0% interest beginning February 2008, timely received by Daniels if received before the last day of each month. On April 7, 2008 at 8:33 A.M., just prior to the 10:30 A.M. hearing, the Debtor filed a Motion to Disapprove Compromise (adv. proc. doc. no. 52). In the objection, the Debtor asserts that she only agreed to the settlement because she had been told there was approximately $30,000.00 equity in her home and that in order to keep her home, she would be required to pay that much into her case for distribution to her creditors.

4

However, the Debtor contends that at the conclusion of the mediation, the Chapter 7 Trustee told the parties that there was no equity in the home and they he would not be pursuing any payments. The Debtor alleges that she therefore thought she was done with the bankruptcy case and adversary proceeding and was "shocked" when she received a copy of the "inaccurate Settlement Agreement." The Debtor's assertions lack credibility. The Chief Deputy Bankruptcy Administrator[6] filed a Report to the Court at 4:56 P.M. the day of the mediation indicating that a settlement had been reached. Therefore, for the Debtor to suggest that no settlement was reached is difficult to accept. Further, the Court questions whether the Debtor was trying either to undo the settlement or delay entry of an order. Both the Bankruptcy Administrator and counsel for the Plaintiff appear to have left the mediation with the understanding that the matter was settled and all that was left was to draw up the paperwork.

Notwithstanding the foregoing, at the April 7, 2008 hearing on the Motion to Approve Compromise and the Motion to Disapprove Compromise, the Court denied the Motion to Approve Compromise and granted the Motion to Disapprove Compromise to ensure the Debtor's rights were protected. Counsel for the Plaintiff said they needed time to do discovery because they held discovery in abeyance, at the suggestion of the Court, while the parties tried to resolve the matter through mediation. The Court entered a scheduling order (adv. proc. doc. no. 54) setting deadlines for discovery and for filing witness and exhibit lists, and set trial for June 16, 2008 with a pre-trial conference set for June 2, 2008.

At the pre-trial conference, only counsel for the Plaintiff appeared. Counsel indicated that she had not had any contact with the Debtor despite attempting to contact

---

[6] The Chief Deputy Bankruptcy Administrator, J. Thomas Corbett, has been acting as a mediator in cases for this Court for almost ten years. His actions and conduct in such capacity have been without any challenge or criticism and have been applauded and recommended by parties.

5

her. The Court inquired of Plaintiff's counsel if mail to the Debtor was being returned; counsel indicated it was not being returned. The Court entered an order (adv. proc. doc. no. 58) stating that the terms of the scheduling order remained in effect and the trial would be held, as scheduled, on June 16, 2008.

At the trial, the Court heard testimony from Scott Daniels, President of Daniels Capital Corporation, and from the Debtor. During the trial, the parties asked the Court for a brief recess to see if they could settle the matter. The Court granted the request. Following the recess, the Court was informed on the record that the parties had settled the matter. In essence, the prior settlement, filed with the Court, would be slightly modified to allow for quarterly payments rather than monthly payments, at the Debtor's request.

The parties entered the terms of the settlement on the record. Specifically, a non-dischargeable judgment would be entered in favor of the Plaintiff and against the Debtor in the amount of $52,000.00. The judgment could be satisfied in full through the payment of 48 quarterly payments in the amount of $600.00 each, at 0% interest, for a grand total of $28,800.00. The Debtor was to begin making quarterly payments of $600.00[7] on August 30, 2008 and every quarter thereafter, November 30th, February 28th and May 30th, for a period of 48 quarters. If the payments were made timely each quarter, the Debtor would satisfy the judgment with repayment of $28,800.00. The Debtor could pre-pay any quarterly payment at any time. If the Debtor chose to make a lump sum payment for the entire balance due, the Debtor was entitled to a 25% discount on the balance due at that time (that is, $28,800.00 minus any quarterly payments made) and the debt would be satisfied in full and the judgment released. The Debtor was also to

---

[7] The Motion to Approve Compromise indicated that the judgment could be satisfied in full through the payment of monthly payments in the amount of $300.00 each, at no interest, until a total of $28,800.00 was paid, which would take 8 years. The settlement announced on the record provided some additional concessions to the Debtor in that payments were reduced to $600.00 per quarter, again at 0% interest, until $28,800.00 was paid, which would take 48 quarters or 12 years, increasing the repayment period.

6

assist and cooperate fully with the Plaintiff in obtaining fees due on a case, CV-00-758, which the Debtor had sought and obtained advanced funds from the Plaintiff and where the fees were due to the Debtor but were never paid by the State of Alabama.

The parties noted for the Court that the change from quarterly payments to monthly payments was made at the request of the Debtor who had concerns about being able to timely make monthly payments, which had been her concern with the original settlement and the reason she objected to the motion to approve compromise. Both parties indicated on the record in open court they were satisfied with the settlement and that the quarterly dates selected were selected to fall between estimated quarterly tax due dates for the Debtor's benefit.

Counsel for Plaintiff indicated she would file a joint amended motion to approve compromise encompassing the terms of the settlement. The Court indicated that upon receipt of the motion to approve compromise, the Court would send out a negative notice giving all parties to the bankruptcy case twenty days to object to the settlement. If no objections were received, the Court would approve the compromise without the need for a hearing. If an objection was filed, the Court would set the matter for hearing. Many months passed and no motion to approve compromise was ever filed. Accordingly, the Court set the matter for a status conference on November 17, 2008.

At the hearing on November 17, 2008, counsel for Plaintiff indicated that she had drawn up a settlement agreement but had been unsuccessful in obtaining the Debtor's signature. The Debtor stated that the funds she'd planned to use to pay the settlement were no longer available and she was therefore unable to sign the settlement. The Court informed the parties that the settlement would be enforced and an order entered accordingly.

Conclusions of Law

Under Alabama law, an "attorney has authority to bind his client, in any action or proceeding, by any agreement in relation to such case, made in writing, or by an entry to be made on the minutes of the court." ALA. CODE § 34-3-21 (1975); see also Phillips v. Knight, 559 So.2d 564, 568 (Ala. 1990). In the instant case, the Debtor is *pro se*. Certainly, the Debtor cannot be challenging her ability to bind herself. Additionally, the Court notes that the Debtor is an attorney licensed to practice law in the state of Alabama.

This matter was settled the first time as a result of mediation on November 19, 2007 and then that settlement was basically confirmed on the record at the trial on June 16, 2008. The terms of the settlement, which varied only slightly from the terms contained in the previously filed Motion to Approve Compromise and, to the extent changed, favored the Debtor, were set forth for the Court on the record. Both parties affirmatively consented, on the record, to the settlement and both parties affirmed, on the record, that they understood the terms of the settlement. The fact that the Debtor has since refused to sign the necessary paperwork for the parties to file a joint motion to approve compromise because the Debtor alleges she does not have the funds to fund the payments due under the settlement is of no consequence. The parties agreed on the record and are now bound. This matter has been settled at least twice now, with little difference between the settlement filed with the Court and the settlement stated on the record, and the Court will not allow the Debtor to continue to drag out and delay this litigation, which has been pending for over two years, nor will it rehash the trial. This Court believes that the Debtor has continued to enter these agreements and later "back out" solely to avoid payment or because she is unable to pay-either way, no further delays will be allowed. The Court finds that the oral agreement, put on the record on June 16,

8

2008, and verbally confirmed and affirmed by each party, is binding on all parties and the Court will enforce the agreement. A separate order, consistent with Rule 7054 of the Federal Rules of Bankruptcy Procedure and consistent with this Memorandum Opinion, will be entered.

Done this the 5th day of December, 2008.

/s/ Tamara O. Mitchell
United State Bankruptcy Judge

DKG